# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PSALM BODDIE, EDUARDO BARRAZA, )
and VINCENT MARKEL *individually,* )
*and on behalf of all other similarly* )
*situated individuals*, )
)
        Plaintiffs, )     Case No.: 1:25-cv-05480
)
     v. )     Judge Sunil R. Harjani
)
JAY MCGRAW; ERIC WELCH; )
CREDITSERVE, INC.; GREETING TEAM, LLC )
d/b/a CUSTOMER CARE GLOBAL; )
MINTO FINANCIAL d/b/a MINTO MONEY; )
and JOHN DOES 1-15, )
)
        Defendants. )

## BRIEF OF MINTO FINANCIAL D/B/A MINTO MONEY
## IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Defendant Minto Financial d/b/a Minto Money ("Minto") asks the Court to compel arbitration and dismiss this action because all three Plaintiffs signed a binding, enforceable agreement to arbitrate all disputes such as the one before this Court, including disputes over whether claims must be submitted to arbitration. For the reasons stated below, the Court should compel individual arbitration for each Plaintiff and dismiss this suit under the *forum non conveniens* doctrine.

## FACTUAL BACKGROUND

This case arises out of five separate Installment Loan Agreements for financial services provided by Minto, signed by Plaintiffs Psalm Crane (now known as Psalm Boddie), Eduardo Barraza, and Vincent Markel (collectively, the "Agreements"). (Declaration of Robert Erhart ("Erhart Decl."), Exs. 1-5.). Plaintiffs signed these Agreements with Minto, an economic

1

development arm and instrumentality of the Native Village of Minto, a federally recognized sovereign American Indian tribe in Alaska. (*Id.*, Ex. 1, 1; Ex. 2, 1; Ex. 3, 1; Ex. 4, 1; Ex. 5, 1.) Boddie, Barraza, and Markel are respectively residents of Louisiana, Oregon, and Kentucky. (Dkt. 1, ¶ 13-15.) All had the option to cancel their Agreements within two days of when they received their loans. None allege they chose to cancel in that time period.

All Plaintiffs agreed to "Arbitration Clauses" that appear separately from the rest of the contract. (Erhart Decl. Ex. 1, 4-5; Ex. 2, 4-5; Ex. 3, 5-6; Ex. 4, 5-7.) Minto allowed a limited waiver of its sovereign immunity but only with respect to the binding Arbitration Clauses. Minto has not and is not waiving its tribal sovereign immunity in any other respect.

In those Arbitration Clauses, Plaintiffs broadly delegated authority to the arbitrator by defining arbitrable disputes to include, without limitation:

> (a) all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision . . . the validity and scope of this . . . Provision and any claim or attempt to set aside this Provision[] [and] (b) all tribal, U.S. federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement, the information you gave us before entering into this Loan Agreement, including the customer information application, and/or any past Agreement or Agreements between you and us."

(*Id.*) In Ms. Boddie's case, because she agreed to this delegation clause in multiple loan agreements, the delegation clause in the most recent loan agreement applies. (*Id., ¶ 9; id.,* at Ex. 5, at 5.)

All Plaintiffs agreed to be bound by the rules and procedures of the American Arbitration Association's consumer dispute rules, to the extent the rules do not contradict the express terms of each Agreement, including the Arbitration Clauses. (*Id.* at Ex. 1, 6-7; Ex. 2, 6-7; Ex. 3, 8-9; Ex. 4, 8-9; Ex. 5, 8-9.) They also agreed to language allowing them to opt out of the arbitration provision

2

within 30 days of signature. None of them opted out. (*Id.* at Ex. 1, 6-7; Ex. 2, 6-7; Ex. 3, 8-9; Ex. 4, 8-9; Ex. 5, 8-9.)

Plaintiffs also agreed, through a separate clause, several paragraphs after the definition of arbitrable disputes, that the arbitrator shall "apply applicable substantive law consistent with the Governing Law set forth above, and the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") and applicable statutes of limitation[.]" (*Id.* at Ex. 5, 5; Ex. 3, 5; Ex. 4, 5.) All of them agreed that "the laws of the Tribe and applicable federal law will govern" their Agreement.

Boddie, Barraza, and Markel filed a complaint seeking class relief for various federal RICO allegations; violations of the Fair Debt Collection Practices Act; an Oregon RICO allegation; Oregon and California Usury and Trade Practice allegations; Unjust Enrichment; and Common Law Conspiracy. (Dkt. 1, Complaint.)

All Plaintiffs seek class-wide relief, even though each contracted to a "Class-Action/Representative Waiver" agreeing that they were "waiving [their] right to pursue or participate in representative claims and you therefore will not be allowed to serve as a representative. . . or participate as a member of a class of claimants, in any lawsuit filed against us and/or related third parties." (Erhart Decl., Ex. 1, 4-5; Ex. 2, 4-5; Ex. 3, 5-6; Ex. 4, 5-7; Ex. 5, 6-7.) Plaintiffs also agreed that, in arbitration, the arbitrator "shall not conduct class arbitration[.]" (*Id.*, Ex. 1, 4-5; Ex. 2, 4-5; Ex. 3, 5-6; Ex. 4, 5-7; Ex. 5, 6-7.)

## **LEGAL STANDARD**

Congress enacted the Federal Arbitration Act ("FAA") in response to judicial hostility to arbitration. *Viking River Cruises, Inc. v. Moriana,* 596 U.S. 639, at 649-50 (2022). In doing so, it required courts to enforce written arbitration agreements that are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

QB\185198.00010\97710222.1

9 U.S.C. § 2. According to the Supreme Court, this provision has two parts: an enforcement mandate, making such clauses enforceable as a matter of federal law and a saving clause, invalidating such clauses on grounds applicable to "any contract." *Viking River Cruises, Inc.,* 596 U.S. at 650 (citations omitted). Under the savings clause, courts may invalidate an arbitration clause based on generally applicable contract defenses, like fraud or unconscionability. *Id.* Thus, "[a] court must enforce an arbitration clause where (1) there is a valid agreement to arbitrate, (2) the claims fall within the scope of the agreement, and (3) the opposing party refused to arbitrate." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 702 (7th Cir. 2022). A matter subject to arbitration should be dismissed under the *forum non conveniens* doctrine. *Id.* at 701.

In addition, parties to a contract can waive the right to participate in a class action or collective arbitration. Courts have held such waivers are valid and enforceable. *Herrington v. Waterstone Mortg. Corp*., 907 F.3d 502, 506 (7th Cir. 2018).

## **ARGUMENT**

Minto asks the Court to compel arbitration for three reasons. First, the Plaintiffs formed a valid and enforceable agreement to arbitrate with Minto. Second, the Plaintiffs, as they are allowed to do, agreed that the arbitrator should decide the question of whether their claims fall within the scope of the Arbitration Clauses. Third, Plaintiffs have no contract defenses that make the Arbitration Clauses unenforceable; at best this Court should sever offending language and compel arbitration. Moreover, Plaintiff Markel has not brought any specific state statutory claims that apply to him and cannot suggest that the arguments to be raised by his fellow plaintiffs apply to him. At the very least, this Court should enforce his agreement to arbitrate. In addition, when compelling arbitration, Court should compel individual arbitration because the Plaintiffs waived

4

their right to class arbitration. Finally, Minto asks the Court to dismiss this case on *forum non conveniens* grounds.

Minto asked counsel for Plaintiffs if they objected to this motion and Plaintiffs' counsel indicated they would oppose the motion.

**I.      Plaintiffs cannot dispute that they have valid and enforceable agreements to arbitrate and that they refuse to arbitrate.**

Plaintiffs cannot seriously contest the existence of the Agreements and thus their Arbitration Clauses, as they rely on the formation and existence of the Agreements in the Amended Complaint. *See Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981) (finding "it would be manifestly inequitable" to allow a party to both claim a party is liable for failure to perform contractual duties and at the same time deny the party is a party to the agreement in order to avoid arbitration). In *Achey v. BMO Harris Bank, N.A.,* the court denied the plaintiff's efforts to challenge the admissibility of loan documents, as those documents were "the sole basis for her claim that the 2012 and 2013 Loans were usurious." 64 F. Supp. 3d 1170, 1175 (N.D. Ill. 2014).

Under Section 2 of the FAA, the Court may look to the specific language delegating arbitrability questions to arbitration, separately from any other contract provisions, and enforce such provisions. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 73 n.3 (2010). As a result, Plaintiffs cannot argue that the Arbitration Clauses are unenforceable by arguing that the contracts, as a whole, are. If the parties agreed to arbitrate their disputes, those arguments relating to other parts of the Agreements are left to the arbitrator. *Id.*

Nor can Plaintiffs dispute the fact that they refuse to arbitrate. Had they agreed to arbitrate, they would have petitioned for arbitration. Instead, they filed suit.

QB\185198.00010\97710222.1

**II.    The parties could, and did, agree that an arbitrator must decide whether the claims fall within the scope of the Arbitration Clauses.**

Minto asks this Court to compel Plaintiffs to resolve disputes in the Plaintiffs' agreed-to forum, in the manner Plaintiffs agreed to resolve any such dispute. Under the FAA, courts must compel arbitration "if the parties have an arbitration agreement and the asserted claims are within its scope." *Sharif v. Wellness Int'l Network, Ltd.,* 376 F.3d 720, 726 (7th Cir. 2004). Because Congress expressed "a liberal federal policy favoring arbitration agreements" in passing the FAA, "as a matter of federal law, any doubts concerning the scope of arbitrable clauses should be resolved in favor of arbitration." *Keifer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909 (7th Cir. 1999).

Because parties to a contract can broadly delegate the issues to be arbitrated, they "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 68-69 (2010). To determine whether the parties agreed to arbitrate arbitrability, courts look to whether there is "clea[r] and unmistakabl[e]" evidence that they did so. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Courts do so by reviewing the arbitration provisions to see what matters the parties delegated to the arbitrator to decide.

Here, all Plaintiffs agreed that an arbitrator must hear "all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision," as well as federal or state law claims arising from or relating directly or indirectly to this Agreement. (Erhart Decl. Ex. 1, 4-5; Ex. 2, 4-5; Ex. 3, 5-6; Ex. 4, 5-7; Ex. 5, 6-7.) In other words, Plaintiffs agreed to arbitrate gateway questions of arbitrability as well as all legal questions arising out of the Agreements, the applicability of state law, and the validity of the Agreements. Although the Seventh Circuit has not definitively ruled on this issue yet, numerous courts have

6

found similar language clearly evidences the parties' agreement to delegate gateway issues to the arbitrator. *Kemph v. Reddam*, Case No. 13 CV 6785, 2015 WL 1510797, *4 (N.D. Ill. March 27, 2015) (collecting cases).

And, if that language was not enough, the Parties incorporated the rules and procedures of the American Arbitration Association, which may constitute clear and unmistakable evidence of a delegation clause. *Walton v. Uprova Credit LLC,* 722 F. Supp. 3d 824, 831 (S.D. Ind. 2024). Although the Seventh Circuit has not yet adopted this rule, a number of sister circuits have. *See Gilman v. Waters,* 61 F. Supp. 3d 794, 800-01 (S.D. Ind. 2014) (collecting cases). The majority view holds that, by incorporating the AAA rules into their agreement, contracting parties evidence clear and unmistakable intent to allow the arbitrator to decide the question of arbitrability. *Id.* (collecting cases).

Whether this Court looks to the plain language of the delegation provision or the fact that the Parties incorporated the rules and procedures of the American Arbitration Association, there is clear and unmistakable evidence that the parties intended to allow the arbitrator to decide the question of arbitrability. This Court should compel arbitration unless Plaintiffs raise an applicable contract defense. As explained below, no such defense applies here.

### III. Plaintiffs have no contract defense to the Arbitration Clauses.

Plaintiffs have no viable arguments against the enforceability of the Arbitration Clauses. In their complaint, they do not allege that the Arbitration Clauses are unenforceable. Plaintiffs Boddie and Markel could only hope to suggest that the Arbitration Clauses are unenforceable because of the prospective waiver doctrine. Plaintiff Barraza, who took out his loans from the state of Kentucky, has not raised any Kentucky state statutory claims and has no such argument. Regardless, the remaining plaintiffs cannot succeed on any argument that the Arbitration Clauses

cannot be enforced for three reasons. First, the U.S. Supreme Court and the Seventh Circuit have never held that a rarely used, judicially-created exception to the FAA applies to make arbitration provisions unenforceable when they do not include state law in their governing law provision. Second, the Parties did not agree to an arbitration provision that prospectively waived the Plaintiffs' ability bring state law claims, rather they agreed that the arbitrator could hear any dispute relating to "U.S. federal or state law claims, disputes, or controversies, arising from or relating directly or indirectly to this agreement." (Erhart Decl. Ex. 1, 4-5; Ex. 2, 4-5; Ex. 3, 5-6; Ex. 4, 5-7; Ex. 5, 6-7.) Third, even if this Court were concerned that the governing law provision ran afoul of the prospective waiver doctrine, that provision can be severed to allow arbitration.

A. **Neither the U.S. Supreme Court nor the Seventh Circuit have expanded the "prospective waiver" doctrine to nullify arbitration agreements that do not include state law in their governing law provisions.**

Plaintiffs cannot cite to any precedential authority holding that arbitration clauses that do not contain a governing law provision providing for their preferred state law are unenforceable. While the Supreme Court has acknowledged the existence of a judicially-created doctrine, the prospective waiver doctrine, to resolve conflicts between the FAA and other federal laws, the Supreme Court has never applied it to invalidate an agreement to arbitrate. As the Court explained, under the prospective waiver doctrine, courts may find agreements to arbitrate unenforceable if they "operat[e] . . . as a prospective waiver of a party's right to pursue statutory *remedies*." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (emphasis added). Courts applying the prospective waiver doctrine do so on public policy grounds but may also apply the common law defense of substantive unconscionability under Section 2 of the FAA and applicable state law. *Italian Colors Restaurant*, 570 U.S. at 235. The Court in *Italian Colors* concluded that the prospective waiver doctrine did not apply. *Id.* Similarly, the Court did not apply the doctrine in the

QB\185198.00010\97710222.1

most recent case where it referenced the doctrine, in a footnote at that, *Viking River Cruises v. Moriana,* 596 U.S. 639, 653 n.5 (2022).

As the Seventh Circuit noted, courts rarely find that agreements violate the prospective waiver doctrine. *Smith v. Board of Directors of Triad Manufacturing, Inc.,* 13 F. 4th 613, 620-22 (7th Cir. 2021). In *Smith,* the Seventh Circuit found a rare opportunity to apply this exception, because the contract at issue prohibited the plaintiff from seeking federal statutory *remedies* specifically allowed under the Employee Retirement Income Security Act of 1974. *Id.* The Seventh Circuit did not rule that this rarely used doctrine invalidates arbitration provisions based on their governing law provisions.

Despite these limitations, some of the other district courts in the Seventh Circuit considering this issue applied the prospective waiver doctrine by concluding the arbitration clause prohibited plaintiffs from pursuing state law *claims* available, rather than federal remedies. *See, e.g., Harris v. FSST Management Services, LLC,* No. 22-C-1063, 2023 WL 5096295 (N.D. Ill. Aug. 10, 2023), *review pending*. In *Harris*, the court found the arbitration provision was not enforceable because, while it applied tribal law and federal law, it precluded the plaintiffs from bringing state law *claims*. The court did so, even though no arbitrator had decided what law applied to the dispute or dismissed any state law claims. The court did not consider the available *remedies* in the agreement or whether those agreements waived the plaintiffs' right to obtain statutorily allowed remedies.

At least one district court in the Seventh Circuit has disagreed, concluding that, "[e]xtending the prospective waiver rule to state law claims is . . . incompatible with the rule's purpose." *Walton v. Uprova Credit, LLC,* 722 F. Supp. 3d 824, 836 (S.D. Ind. 2024). The *Walton* court reasoned that courts created this doctrine based on the uncontested understanding that

Congress did not mean to preempt rights created by other federal statutes by creating the FAA. *Id.* (citing *Mitsubishi Motors,* 473 U.S. at 628). Because courts apply the prospective waiver doctrine to avoid putting the FAA above other federal statutes where compelling arbitration would jeopardize other federally protected interests, the *Walton* court would not extend the doctrine to state law claims. *Id.*

The Supreme Court did not vastly expand the prospective waiver doctrine to limit the enforcement of the FAA to those arbitration agreements that have state law as the governing law through a footnote in *Viking River Cruises. v. Moriana. See* 596 U.S. at 653 n.5. Rather, the Court stated, the FAA "requires only the enforcement of provisions to settle a controversy by arbitration . . . and not any provision that happens to appear in a contract that features an arbitration clause." *Id.*. In other words, the Supreme Court has held that district courts are still required to enforce arbitration provisions and defer substantive legal interpretations of *other* provisions besides valid arbitration provisions, including delegations of arbitrability such as the provisions in this case, to an arbitrator. *Id.*

The only Circuit Court of Appeals addressing this issue in the context of an arbitration provision that included federal law but not state law in its governing law provision enforced the arbitration agreement. *Dunn v. Global Trust Management,* No. 21-10120, 2024 WL 4379966, at *9-*11 (11th Cir. Oct. 3, 2024) (*per curiam*). While the decision is not published, it is persuasive. In reaching its decision, the Eleventh Circuit considered very similar language identifying both tribal law and "applicable federal law," as well as the FAA specifically, as the governing law for arbitration. *Id.* The Eleventh Circuit ruled that the application of tribal law and the FAA were not in conflict, and that arbitration could proceed because the agreements to arbitrate "incorporate, rather than preclude, the FAA." *Id.*

QB\185198.00010\97710222.1

Just as in *Global Trust Management*, the Arbitration Clauses at issue in this case "incorporate, and therefore do not foreclose, Plaintiffs' rights under the FAA." *Id*. at *12 n.7. Importantly, the standalone delegation clauses here still function as an "additional, antecedent agreement the party seeking arbitration asks the federal court to enforce." *Id*. at *14 (quoting *Rent-A-Ctr., West* 561 U.S. at 70). The Court must enforce, per the Seventh Circuit's previous holdings, the provisions permitting arbitration on gateway issues including arbitrability, since the applicable delegation clauses incorporate the FAA through their invocation of federal law. *Rent-a-Ctr., West*, 561 U.S. at 70.

**B.** **The parties did not agree to Arbitration Clauses that run afoul of the prospective waiver doctrine.**

Previous borrowers have attempted to argue that the Arbitration clauses are unconscionable or against public policy due to the prospective waiver doctrine. Here, the Parties agreed to Arbitration Clauses that do not run afoul of the prospective waiver doctrine as it has been acknowledged by the Supreme Court or the Seventh Circuit and, even if that doctrine could be expanded to apply to state law claims, would not run afoul of that expansion.

The Parties did not limit the remedies available to the Plaintiffs—which is the extent of the prospective waiver doctrine recognized by the U.S. Supreme Court and the Seventh Circuit. *Italian Colors Rest.*, 570 U.S. at 235; *Smith,* 13 F. 4th at 620-22. Just the opposite, as the Parties agreed, in the Arbitration Clauses, to provide additional remedies to Plaintiffs, beyond those that may be allowed based on the claims they brought. Regardless of the remedies available for the claims brought, the Arbitration Provision provides, "[i]f the arbitrator renders a decision or an award in your favor resolving the dispute, the arbitrator shall award you your reasonable attorneys' fees." (*See* Erhart Decl. Exs. 1-4.)

QB\185198.00010\97710222.1

But, even if this Court finds the rarely used prospective waiver doctrine could be expanded beyond that acknowledged by the Supreme Court and the Seventh Circuit, the doctrine would not apply here. After all, the parties specifically delegated to the arbitrator, the authority to arbitrate all claims, including those brought under state law. Maybe Plaintiffs will not succeed on those claims, but whether a party will succeed is not an issue a court examines when determining whether to enforce the parties' agreement to have the dispute resolved in arbitration. *Italian Colors Rest.*, 570 U.S. at 238-39.

And, even if this Court is inclined to expand the prospective waiver doctrine, this Court should not do so at this point in this dispute. Because the Parties delegated to the arbitrator the ability to decide disputes involving state law claims, this Court should not presume how the arbitrator will decide any such claims and presume the arbitrator will do so in a way that prevents Plaintiffs from effectively vindicating any applicable remedies under state law at this stage. If, after the arbitrator issues an award, any of the Plaintiffs believe they were unable to effectively vindicate a state law remedy, they should raise those concerns with the Court, when they are ripe and not just theoretical.

**C.      If the Court finds that the Agreements include unconscionable provisions or provisions that violate public policy, those provisions are severable from the Arbitration Clauses.**

Even if this Court were to agree that the Supreme Court recognized a vast expansion of the prospective wavier doctrine via a footnote, these Arbitration Clauses are still enforceable as any offending language can be severed. Doing so follows Congress' liberal policy favoring arbitration agreements. Thus, should this Court be concerned that the governing law clauses, as read into the Arbitration Clauses, make the Clauses unconscionable or violate public policy, this Court should

sever the governing law clauses, and compel arbitration. If the Court does so, it still has the ability to enforce the Arbitration Clauses.

Under Section 2 of the FAA, courts can sever a valid agreement to arbitrate from the remainder of a contract, even if the remainder of the contract includes language that makes the contract as a whole invalid. *See Rent-A-Cntr., W.*, 561 U.S. at 70. Section 2 provides:

> a written provision to settle by arbitration a controversy is valid, irrevocable, and enforceable *without mention* of the validity of the contract in which it is contained. Thus, a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.

*Id.* at 70-71 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 447 (2006) (emphasis in original) (quotation marks omitted).

Here, Minto asks the Court to enforce the agreement to arbitrate the question of arbitrability as the "specific agreement to arbitrate." Because the Parties agreed, through a valid delegation clause, to arbitrate disputes "arising from or relating directly or indirectly to" the Arbitration Clauses, the entire matter is arbitrable. (Erhart Decl. Ex. 1, 4-5; Ex. 2, 4-5; Ex. 3, 5-6; Ex. 4, 5-7; Ex. 5, 6-7.) In *Rent-A-Center, West* the Court held that the "remainder of the contract" for severability purposes can be the "rest of the agreement to arbitrate claims." 561 U.S. at 71. The Court explained "the invalidity of one provision *within an arbitration agreement* does not necessarily invalidate its other provisions[.]" *Id.* at 73 n.3 (emphasis in original). The same is true here.

The court in *Fahy v. Minto Development Corporation,* did not consider this issue. 722 F. Supp. 3d 784 (N.D. Ill. 2024). Had it done so, the *Fahy* court would have had to sever the governing law provision rather than find the arbitration clause unenforceable. Here, the Court should follow

QB\185198.00010\97710222.1

the holding of *Rent-A-Center, West* and, if it finds the governing law provision, as incorporated into the Arbitration Clauses, contains a prospective waiver of federal or state law remedies, sever any violative provision and follow the Congressional mandate to enforce agreements to arbitrate.

**IV.     The Court should compel individual arbitration because Plaintiffs waived their rights to class relief.**

The Court should require each of the three Plaintiffs to pursue their arbitration claims individually, rather than as representatives of a putative class, because the Plaintiffs already waived their right to class relief in any court or in an arbitration proceeding. Specifically, Plaintiffs agreed to bolded, all-capital-letters language stating that they agreed to waive their right to "pursue or participate in representative claims and you therefore will not be allowed to serve as a representative, as a private attorney general, or in any other representative capacity . . . in any lawsuit filed against us . . . Therefore, the arbitrator shall not conduct class arbitration; that is, the arbitrator shall not allow you to serve as a representative. . . for others in the arbitration." (Erhart Decl. Ex. 1, 4-5; Ex. 2, 4-5; Ex. 3, 5-6; Ex. 4, 5-7; Ex. 5, 6-7.)

Waivers of the right to represent a class are enforceable. "Arbitration clauses waiving the right to proceed on a class-wide basis must be enforced according to their terms; the FAA does not permit courts to invalidate arbitration agreements because they preclude class-wide arbitration of a federal law claim." *Huser v. Midland Funding, LLC*, No. 17-CV-04490, 2019 WL 4393017, at *7 (N.D. Ill. Sept. 13, 2019). As a result, the Court should require each of the Plaintiffs to proceed in separate arbitrations to resolve their individual claims.

**V.     Dismissal under the *forum non conveniens* doctrine is the proper remedy.**

Dismissal is appropriate in this case because all of the claims in Plaintiffs' Complaint are subject to the Arbitration Clauses, and therefore cannot be heard by this Court. The Seventh Circuit

QB\185198.00010\97710222.1

held that the proper procedural mechanism for compelling arbitration is pursuant to the *forum non conveniens* doctrine. *Rock Hemp Corp.*, 51 F.4th at 701. "[M]any courts have recognized that a district court, in its discretion, may dismiss an action where it is clear that, after arbitration has concluded, no claims will remain for the court to resolve. *Int'l Bhd. of Elec. Workers, Loc. 1393 v. Carroll White Rural Elec. Membership Corp.*, No. 1:20-CV-1689-JMS-TAB, 2020 WL 5544021, at *9 (S.D. Ind. Sept. 16, 2020). *Accord Stonegate Ins. Co. v. Fletcher Reinsurance Co.*, No. 21 CV 3523, 2021 WL 5769528, at *2 (N.D. Ill. Dec. 6, 2021) ("However, several circuits have found that there is a judicially-created exception to [this] general rule which indicates district courts may, in their discretion dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.") (internal quotation omitted). In this case, dismissal is the appropriate remedy, since this Court does not have jurisdiction to resolve any of the legal or factual questions raised in Plaintiffs' Complaint.

## **CONCLUSION**

For the foregoing reasons, Minto respectfully requests that the Court **COMPEL** individual arbitration and **DISMISS** this action.

15

Dated: July 29, 2025.

By: */s/ Emily M. Feinstein*

**QUARLES & BRADY LLP**

Emily Feinstein*
Wisconsin Bar No. 1037924
Emily.feinstein@quarles.com
Telephone: (608) 283-2470
33 East Main Street, Suite 900
Madison, WI 53703

**QUARLES & BRADY LLP**
Taylor Rioux
ARDC #6350076
Taylor.Rioux@quarles.com
Telephone: (312) 715-5252
155 North Wacker Drive
Suite 3200
Chicago, IL 60606

*Attorneys for Defendant Minto Financial
d/b/a Minto Money*

** Admitted *pro hac vice*

QB\185198.00010\97710222.1