**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PSALM BODDIE, EDUARDO BARRAZA, and VINCENT MARKEL, individually, and on behalf of all other similarly situated individuals, | |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-5480 |
| JAY MCGRAW; ERIC WELCH; CREDITSERVE, INC.; GREETING TEAM, LLC d/b/a CUSTOMER CARE GLOBAL; MINTO FINANCIAL, d/b/a MINTO MONEY; and JOHN DOES 1-15, | Judge: Hon. Sunil R. Harjani |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF CREDITSERVE DEFENDANTS'
MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS**

Pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f) and 23(a)-(b), Defendants CreditServe, Inc. ("CreditServe"), Greeting Team LLC ("Greeting Team"), Jay McGraw ("McGraw"), and Eric Welch ("Welch") (collectively, the "CreditServe Defendants") file this Motion to Dismiss or Strike the class allegations in Plaintiff's Complaint.

## I.     INTRODUCTION

Plaintiffs Psalm Boddie,[1] Eduardo Barraza, and Vincent Markel (collectively, "Plaintiffs") all entered into written loan agreements (the "Loan Agreements"), in which they expressly agreed they would not pursue any litigation or arbitration on behalf of any putative class.[2] Plaintiffs nevertheless seek to avoid their contractual obligations by, among other things, pursuing herein proposed nationwide class claims and class claims on behalf of certain classes of Oregon, Kentucky, and California residents. In doing so, Plaintiffs seek to convert their inherently individualized disputes into an impermissible class action. Based on the terms of the Loan Agreements, Plaintiffs' class allegations should be dismissed or stricken.

## II.     RELEVANT FACTS

Plaintiffs each entered into separate, online consumer loan agreements ("Loan Agreements") with Defendant Minto Financial. *See* Compl. ¶¶ 127, 128, 137, 144.[3] Each Plaintiff applied for his

---

[1] Psalm Boddie was previously known as "Psalm Crane" and applied for and obtained the loans at issue in under her prior name.

[2] The CreditServe Defendants have previously moved to compel arbitration of this matter under the arbitration provisions of the Loan Agreements and dispute that this Court is the proper venue to decide any aspect of Plaintiffs' claims. (ECF No. 49.) The CreditServe Defendants file this motion to comply with the Court's order requiring them to file a responsive pleading to the Complaint while the motion to compel is pending. (ECF No. 56.) Nothing herein is intended by the CreditServe Defendants to waive any rights any of them have under the Loan Agreements, all of which are hereby reserved.

[3] True and correct copies of each relevant Loan Agreement are attached hereto and authenticated by the Declaration of Robert Erhart (hereafter, "Erhart Decl."), at Exs. 1-5. *See* Erhart Decl., ECF No. 46. Plaintiff Boddie entered at least three Loan Agreements, but only acknowledges the first two in her Complaint. But Boddie's later-executed Agreement applied by its terms to disputes arising under "any past Agreement … between you and us…" (*See* Erhart Decl. ¶¶ 3 and 8 and Ex. 5 (ECF No. 46-5) at 6 (Definitions). The CreditServe Defendants seek to enforce the Plaintiffs' operative Agreements and accompanying arbitration

or her respective Minto loans online. Once approved for their loans, Plaintiffs were required to review the terms of their Loan Agreements and type their names into several boxes to indicate their acknowledgement and understanding of the Loan Agreements' provisions. By electronically signing their Loan Agreements, Plaintiffs agreed to a "Dispute Resolution Procedure and Arbitration Provision" ("Arbitration Provision") requiring binding arbitration to resolve all "disputes" with the CreditServe Defendants "arising from or relating . . . to" the Loan Agreements, including any disputes concerning the validity or scope of the Arbitration Provision, or any attempt to set aside the Arbitration Provision. *See, e.g.*, Erhart Decl. Ex. 3 (ECF No. 46-3) at 6. The Arbitration Provisions in the Loan Agreements share many key terms and provisions. Plaintiffs agreed, in clear, bold, and conspicuous typeface, to waive their rights to a jury trial and waive their rights to pursue or participate in a class action proceeding or act as class representatives. *Id*., Ex. 1 (ECF No. 46-1) at 6; Ex. 2 (ECF No. 46-2) at 6; Ex. 3 (ECF No. 46-3) at 7; Ex. 4 (ECF No. 46-4) at 7-8; and Ex. 5 (ECF No. 46-5) at 7. Plaintiffs specifically agreed to the following:

> **CLASS-ACTION/REPRESENTATIVE WAIVER: BY AGREEING TO THE TERMS OF THIS ARBITRATION PROVISION, YOU HEREBY AGREE AND ACKNOWLEDGE THAT YOU ARE WAIVING YOUR RIGHT TO PURSUE OR PARTICIPATE IN REPRESENTATIVE CLAIMS AND YOU THEREFORE WILL NOT BE ALLOWED TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATIONS THIRD PARTIES. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

*See id*. Ex. 3 (ECF No. 46-3) at 7; Ex. 4 (ECF No. 46-4) at 7-8; and Ex. 5 (ECF No. 46-5) at 7 (emphasis in original).

---

provisions.

In addition, the Loan Agreements provided each Plaintiff a "Right to Opt Out" of the Arbitration Provision upon written notice within thirty days after execution. *Id*. Ex. 3 (ECF No. 46-3) at 8; Ex. 4 (ECF No. 46-4) at 8; and Ex. 5 (ECF No. 46-5) at 8. None of the Plaintiffs elected to opt out of the Arbitration Provision. *Id*. ¶ 10.

Second, Plaintiffs agreed to the following standalone class waiver—in bolded, capital letters—in a separate portion of the Loan Agreement:

> You acknowledge and agree that by executing the agreement (including the terms of this arbitration provision), submitting it to us, and accepting the loan proceeds without cancelling your loan:
>
> - <u>NO RIGHT TO COURT RESOLUTION:</u> YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES. YOUR RIGHT TO FILE SUIT IN COURT AGAINST US FOR ANY CLAIM OR DISPUTE REGARDING THIS AGREEMENT IS LIMITED BY THIS PROVISION AND SOVEREIGN IMMUNITY.
> - <u>WAIVER OF JURY TRIAL:</u> YOU ARE WAIVING ANY RIGHT YOU MAY OTHERWISE HAVE TO A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR AGAINST A RELATED THIRD PARTY.
> - <u>**CLASS-ACTION/REPRESENTATIVE WAIVER:**</u> **YOU ARE WAIVING ANY RIGHT YOU MAY HAVE TO PURSUE OR PARTICIPATE IN REPRESENTATIVE CLAIMS AND YOU THEREFORE WILL NOT BE ALLOWED TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

*Id*., Ex. 1 (ECF No. 46-1) at 6; Ex. 2 (ECF No. 46-2) at 6; Ex. 3 (ECF No. 46-3) at 7; Ex. 4 (ECF No. 46-4) at 8; and Ex. 5 (ECF No. 46-5) at 7-8. (bolding in original).

Thus, Plaintiffs agreed in two separate ways that they would not participate in any putative class action asserting claims arising out of the Loan Agreements. Despite Plaintiffs' promises to arbitrate all disputes arising from the Loan Agreements on an individual, not class, basis, they filed

this putative class action.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(d)(1)(D) allows a court to "issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[,]".  Federal Rule of Civil Procedure 23(c)(1)(A) requires the court to determine whether to certify a case as a class action "[a]t an early practicable time." "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiffs' claim[.]" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). Consistent with this principle, courts in the Seventh Circuit have held that "a ruling on class certification is appropriate at the pleading stage where, as here, the pleadings make clear that the suit cannot satisfy Rule 23." *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 830 (N.D. Ill. 2013); *see also Bohn v. Boiron, Inc.*, No. 11C08704, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013) (citing cases).

The "interplay of Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) empowers the Court to dismiss or strike class allegations at the pleading stage." *Murdock-Alexander v. TempsNow Emp't*, No. 16 C 5182, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016); *Wright v. Family Dollar, Inc.*, No. 10-cv-4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("[A] motion to strike class allegations, made pursuant to [Rules 23(c)(1)(A) and 23(d)(1)(D)], is an appropriate device to determine whether the case will proceed as a class action."). Indeed, Rule 23(c)(1)(A) of the Federal Rules of Civil Procedure permits the Court to strike a class allegation "even before the plaintiff files a motion requesting certification." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). A court should thus address class allegations at the pleading stage where, as here, "the pleadings are facially defective or inherently deficient." *Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1298 (N.D. Ill. 2020); *see also King v. Capital One Bank (USA), N.A.*, No. 3:11-

CV-00068, 2012 WL 5570624, at *15 (W.D. Va. Nov. 15, 2012) (granting motion to strike class allegations based on contractual class action waiver).

At the pleading stage, the Rule 12(b)(6) standard is the proper standard under which to evaluate whether a plaintiff can "meet Rule 23's requirements for certification." *Williams v. Potomac Family Dining Grp. Operating Co., LLC*, No. GJH-19-1780, 2019 WL 5309628, at *5 (D. Md. Oct. 21, 2019). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), but "a legal conclusion couched as a factual allegation" need not be accepted as true, *Twombly*, 550 U.S. at 555 (citation omitted). Allegations that are contradicted by documents attached to the complaint or incorporated by reference therein are also disregarded. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998).[4] Only then should the court assess whether the well-pleaded facts, taken as true, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## IV. PLAINTIFFS AGREED NOT TO PURSUE THE PUTATIVE CLASS CLAIMS THEY ASSERT HERE.

In their Loan Agreements, Plaintiffs expressly agreed not to pursue any claims on a class basis. Erhart Decl. Ex. 1 (ECF No. 46-1) at 6; Ex. 2 (ECF No. 46-2) at 6; Ex. 3 (ECF No. 46-3) at 7; Ex. 4 (ECF No. 46-4) at 7-8; and Ex. 5 (ECF No. 46-5) at 7-8. Plaintiffs have no ground for avoiding this unambiguous class waiver.

---

[4] The incorporation-by-reference doctrine allows a defendant to submit to the court documents referred to in the complaint and central to the plaintiff's claim without converting defendant's 12(b)(6) motion to a motion for summary judgment. The doctrine prevents a plaintiff from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

Initially, general principles of contract law confirm that the class waivers in the Loan Agreements should be enforced here. "Where the terms of a contract are clear and unambiguous, the contract must be enforced as written, and no court can rewrite a contract to provide a better bargain to suit one of the parties."[5] *Highland Supply Corp. v. Ill. Power Co.*, 973 N.E.2d 551, 559 (Ill. App. 2012) (internal quotations omitted).[6]

Accordingly, courts routinely enforce class action waivers like those executed here. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (determining that neither antitrust law nor Rule 23 precludes class action waivers); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 277 (7th Cir. 1995) (holding court was "obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis"); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) ("The Arbitration Agreement at issue here explicitly precludes [plaintiffs] from bringing class claims or pursuing 'class action arbitration,' so we are therefore 'obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis.'").

Furthermore, although courts frequently address the enforcement of class waivers in the context of arbitration provisions, "there is no logical reason to distinguish a [class] waiver in the context of an arbitration agreement from a waiver in the context of any other contract[.]"

---

[5] Under the express terms of the Loan Agreements, the applicable law is "[t]he laws of the Tribe and applicable federal law …, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state." Erhart Decl. Ex. 3 (ECF No. 46-3) at 5; Ex. 4 (ECF No. 46-4) at 6; and Ex. 5 (ECF No. 46-5) at 5. For purposes of this Motion only, the CreditServe Defendants cite general contract principles of Illinois law. *SAMS Hotel Grp., LLC v. Environs, Inc.*, 716 F.3d 432, 434 (7th Cir. 2013) (applying state law to determine the enforceability of a limitation of liability provision). The CreditServe Defendants expressly reserve the right to challenge the application of Illinois law, or the laws of any other state, should the case proceed.

[6] Thus, "[o]ne is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement." *Leon v. Max E. Miller & Son, Inc.*, 23 Ill. App. 3d 694, 699, 320 N.E.2d 256, 260 (1st Dist. 1974).

*Convergys Corp. v. NLRB*, 866 F.3d 635, 639 (5th Cir. 2017) (quoting *Palmer v. Convergys Corp.*, No. 7:10-cv-145, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012)); *see also DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F. Supp. 3d 1342, 1348–49 (S.D. Fla. 2017) ("[C]lass action waivers are enforceable outside the context of consumer arbitration."). As one court explained,

> Class action waivers have been called "litigation devices," more closely aligned with venue than with any substantive right. As a litigation device, class action waivers are proper tools to be used by parties in contracting and bargaining. The court must leave the decision about allowing or forbidding participation in class action litigation in the hands of the contracting parties.

*Palmer*, 2012 WL 425256, at *3 (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005)); *Slawienski v. Nephron Pharm. Corp.*, No. 1:10–CV–0460–JEC, 2010 WL 5186622, at *2 (N.D. Ga. Dec. 9, 2010) (noting "[t]here is no legal authority to support plaintiff's position" to "invalidate the class action waiver and permit a collective or class action arbitration"); and *Brown v. Sears Holdings Mgmt. Corp.*, No. 09 C 2203, 2009 WL 2514173, at *4 (N.D. Ill. Aug. 17, 2009) (distinguishing FLSA "rights that cannot be abridged by private agreement" from permitted waiver of "dispute resolution mechanisms that can be employed to determine legal entitlement to those remedies" which "are not affected by [plaintiff's] inability to litigate via a class action.").

That is also true in the Seventh Circuit. *Hanus v. Harting, Inc. of N. Am.*, No. 21 CV 5289, 2024 WL 4894283, at *3 (N.D. Ill. Nov. 26, 2024) (enforcing class waiver where allegations "did not involve an arbitration agreement"); *Niiranen v. Carrier One, Inc.*, No. 20-CV-06781, 2022 WL 103722, at *6 (N.D. Ill. Jan. 11, 2022) ("Thus, there is no reason to believe that any part of the Seventh Circuit's rationale in *Lewis* survives such that it would preclude enforcement of a class-action waiver outside of the arbitration context."); *see also Fischer v. Instant Checkmate LLC*, No. 19 C 4892, 2022 WL 971479, at *4 (N.D. Ill. Mar. 31, 2022) ("[A]lthough class action waivers are

often found in arbitration agreements . . . the two contract terms are conceptually distinct.")
(quoting *Laver v. Credit Suisse Sec. (USA), LLC*, 976 F.3d 841, 846 (9th Cir. 2020)).

General contract law principles confirm that the class waivers should be enforced here.
"When the language of a contract is plain and capable of legal construction, the language alone
must determine the agreement's force and effect." *Clarity Labs., LLC v. Morris SNF Mgmt., LLC*,
No. 22 C 2193, 2024 WL 4213269, at *2 (N.D. Ill. Sept. 17, 2024) (citations omitted). Thus,
"part[ies] ha[ve] a general duty to read documents before [they] sign[] them, and [a] failure to do
so will not render the document invalid." *Oelze v. Score Sports Venture, LLC*, 927 N.E.2d 137, 145
(Ill. App. 2010). The plain text of the parties' Loan Agreements clarifies that class claims cannot
be asserted here, and those terms are enforceable. That ends Plaintiffs' proposed class claims.

## V.   THE CREDITSERVE DEFENDANTS CAN ENFORCE THE CLASS WAIVERS

To the extent Plaintiffs argue the CreditServe Defendants cannot enforce the class waivers
because they are not signatories to the loan agreement, they are wrong. The Seventh Circuit and
Illinois courts[7] have found that a nonsignatory can enforce a contractual provision under three
theories: third-party beneficiary, agency, and equitable estoppel. *See Sosa v. Onfido, Inc.*, 8 F.4th
631, 639 (7th Cir. 2021).

Here, the CreditServe Defendants can enforce the class waivers.

**Third-party beneficiary:**  The CreditServe Defendants can enforce the class waivers as
third-party beneficiaries of the Loan Agreements. It is well settled that a third-party beneficiary
may enforce the terms of a contract where, as here, the arbitration agreement expressly references,

---

[7] "'[T]raditional principles of state law' govern whether a contract . . . is enforceable by or against a non-party." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)). Accordingly, "a litigant who was not a party to the relevant . . . agreement may [seek to enforce a provision] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen*, 556 U.S. at 632. As noted above, for the purposes of this Motion only, the CreditServe Defendants cite general contract principles of Illinois law.

and confers benefit on, that third party. *Carlson v. Rehab. Inst. of Chicago*, 50 N.E.3d 1250, 1256 (Ill. App. 2016) ("An intended beneficiary is intended by the parties to the contract to directly benefit for the performance of the agreement; under the contract an intended beneficiary has rights and may sue.") (citation omitted). "[I]t is unnecessary for the contract to specifically name the third-party beneficiary, but the contract must at least define a class of individual beneficiaries that would include the plaintiff." *Harleysville Ins. Co. v. Mohr Architecture, Inc.*, 198 N.E.3d 1038, 1046 (Ill. App. 2021)); *see also Crawford v. Belhaven Realty LLC*, 109 N.E.3d 763, 776 (Ill. App. 2018) ("But the contract does not need to specifically name the third-party beneficiary as long as it adequately defines a class of individual beneficiaries.") (citation omitted).

Here, the Arbitration Agreement to which Plaintiffs agreed conferred a benefit – the right to arbitrate Disputes – on all "<u>agents</u>, directors, officers, governors, managers, members, parent company or affiliated entities," a class of direct beneficiaries that includes the CreditServe Defendants *See Crawford*, 109 N.E.3d at 776 (administrator of estate of nursing home resident was intended third-party beneficiary where purchase agreement for nursing home stated purchaser "shall assume any and all debts, obligations, claims, and other liabilities, whether known or unknown, relating to the operations of Belhaven Nursing Home."). And, because Plaintiffs' own allegations identify the CreditServe Defendants as "agents" and "affiliated entities" entitled to enforce the Arbitration Agreement, it does not matter whether the CreditServe Defendants were subjectively known to Plaintiffs at the time they executed the Loan Agreements. "[A] third-party beneficiary contract may exist even if the beneficiary is not named, not identifiable, or not yet in existence, so long as the beneficiary is identifiable or in existence when the time for performance [here, the demand for arbitration] arrives." *Bd. of Educ. of Cmty. Sch. Dist. No. 220 v. Vill. of Hoffman Estates*, 467 N.E.2d 1064, 1067 (Ill. App. 1984); *see also Gothberg v. Nemerovski*, 208

N.E.2d 12, 20 (Ill. App. 1965) ("The fact that plaintiffs' identity may not have been known at the time the contract to procure insurance was made does not prevent them from assuming the status of third party beneficiaries").

**Equitable estoppel:** Equitable estoppel "permits a nonsignatory to [enforce a contractual provision] in two different circumstances:" (i) "when the signatory must rely on the terms of the written agreement in asserting its claims against a non-signatory;" and (ii) "when the signatory raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004–05 (N.D. Ill. 2001); *see also Huntley v. Rosebud Econ. Dev. Corp.*, No. 22-CV-1172-L-MDD, 2023 WL 5186247, at *3 (S.D. Cal. Aug. 11, 2023), *appeal dismissed*, No. 23-55765, 2023 WL 8641376 (9th Cir. Oct. 31, 2023) (same).

Both theories of estoppel apply here. Each of Plaintiffs' claims depends on a finding that the Loan Agreements are unenforceable under state law. Compl. ¶¶ 176-245 (alleging violations of RICO in connection with "illegal loans" and "illegal lending activities"); *id*. ¶¶ 246-274 (alleging violation of Oregon RICO statute based on the allegedly "usurious, and therefore, unlawful loans"); *id*. ¶¶ 275-299 (alleging violation of Fair Debt Collection Practices Act based on "collection or attempted collection of usurious loans" that are "legally unenforceable"); *id*. ¶¶ 300-315 (alleging violations of Oregon law based on loans "with interest rates in excess of those authorized" by state statute); *id*. ¶¶ 316-344 (alleging violation of Oregon deceptive practices statute "by advertising, offering, and distributing usurious loans"); *id*. ¶¶ 345-355 (alleging violations of California law based on loans "made at an interest rate greater than 12%"); *id*. ¶¶ 356-370 (alleging violations of California Unfair Competition Law based on loans that are "void and unenforceable" under state financial code); *id*. ¶¶ 371-384 (seeking unjust enrichment on the

basis that "each of these states endorse a staunch public policy against usury"); *id*. ¶¶ 385-399 (alleging common law conspiracy based on "illegal usurious loans" and "illegal lending activities"). Thus, Plaintiff's claims "rely on the terms of" the loan agreement because all of Plaintiff's claims are predicated on the loan terms allegedly being usurious. *Huntley*, 2023 WL 5186247, at \*3 ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."); *Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 870 (E.D. Wis. 2006) (finding that a plaintiff cannot acknowledge the debt arising out of a written agreement but not the arbitration provision, and that plaintiffs should be estopped from denying part of the agreement).

Moreover, Plaintiffs allege "substantially interdependent and concerted misconduct" among Minto Financial and the CreditServe Defendants. For example, Plaintiffs allege the existence of a RICO "enterprise" consisting of all "Defendants," who are "associated together for the common purpose of making, collecting, and profiting off the illegal loans." Compl. ¶¶ 187, 203, 221, 241. Plaintiffs further allege that the CreditServe Defendants "reinvested the usurious proceeds back into the lending scheme"; that "CreditServe, McGraw, and Welch are the de facto owners and control the lending enterprise"; that Greeting Team attempted to "collect Plaintiff Boddie's Minto Money loans"; and that the CreditServe Defendants "use the website www.mintomoney.com to make loans to consumers, including consumers in California and Oregon at annual percentage rates in excess of 250%." *Id.* ¶¶ 91, 97, 133, 207.

The same result obtains even under the more traditional standard for estoppel under Illinois law. "A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person." *In re Marriage of Smith*, 806 N.E.2d 727, 730 (Ill. App. 2004). Here, assuming the truth of

the allegations for purposes of this Motion only, all three Plaintiffs induced the CreditServe Defendants to undertake lending activities by agreeing to arbitrate all Disputes as defined in the relevant Loan Agreements. The loan proceeds were provided in reliance on Plaintiffs' statements and/or conduct, to the detriment of the CreditServe Defendants. Plaintiffs are therefore estopped to deny their agreement to arbitrate and to waive class claims. *See Gersten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 579 (N.D. Ill. 2006) ("[A] party may be estopped from asserting that an arbitration clause ... is inapplicable when [it] simultaneously claims the direct benefit of that contract.").

The CreditServe Defendants may, therefore, enforce the class waivers based on Plaintiffs' allegations of substantially independent and concerted misconduct. *Hoffman*, 143 F. Supp. 2d at 1005 (finding that because a complaint contained RICO and common law conspiracy allegations between the signatory and non-signatory defendants, plaintiffs were equitably estopped from avoiding the arbitration provision); *MMIE, LLC v. Synectics Media, Inc*., No. 20-cv-3874, 2021 WL 2645570, at *6 (N.D. Ill. June 28, 2021) (finding that unjust enrichment claims are "precisely the kind of claim that must be subjected to arbitration under the principles of equitable estoppel because it both relies on and references the contracts that include that arbitration clause, and involves interdependent and concerted conduct by signatories and non-signatories together").

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, the CreditServe Defendants respectfully request the Court grant their Motion to Dismiss or Strike the Class Allegations in Plaintiffs' Complaint.

Dated: August 12, 2025

Respectfully submitted,


By: /s/ *Christopher L. Wanger*

      Christopher L. Wanger (Cal. Bar No. 164751)
      *Admitted pro hac vice*
      MANATT, PHELPS & PHILLIPS, LLP
      One Embarcadero Center, 30th Floor
      San Francisco, CA 94111
      Telephone: (415) 291-7400
      Email: cwanger@manatt.com

      *Counsel for Defendants CreditServe, Inc., Jay McGraw, Eric Welch and Greeting Team*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 12, 2025, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docket.

<u>/s/ *Christiopher L. Wanger*</u>
Christopher L. Wanger